**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| LARRY SHOEMAKER, | Case No. 1:17-cv-205 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Larry Shoemaker filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.     Summary of Administrative Record**

In July 2013, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income alleging a disability onset date of June 15, 2010 due to mental and physical impairments. (Tr. 213-22). Plaintiff's insured status for DIB expired on December 31, 2012[1]. (Tr. 224). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On February 4, 2016, ALJ Kathleen Laub held an evidentiary hearing,

---

[1] To be entitled to DIB, a claimant must show that he was disabled on or before the date his insured status expired. 20 C.F.R. § 404.131; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

1

by video, at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On March 25, 2016, the ALJ denied Plaintiff's applications in a written decision. (Tr. 17-33). Plaintiff now seeks judicial review of the denial of his application for benefits.

Plaintiff was born December 15, 1963 and was 46 years old at the time of the alleged onset date of disability. (Tr. 31). He testified that he graduated from high school and completed a few college classes. (Tr. 45-46). Plaintiff alleges disability primarily due to mental impairments including memory problems and anxiety. (Tr. 52). He has past relevant work as a teacher aide, insurance clerk, delivery driver and vending machine coin collector. (Tr. 68).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "unspecified macular degeneration, bilateral; age-related nuclear cataract, bilateral; other vitreous opacities, bilateral; dry eyes syndrome of the bilateral lacrinal glands; chronic giant papillary conjunctivitis, left eye; asthma, mild right carpal tunnel syndrome and chronic actinic otitis of both ears." (Tr. 18). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work with the following limitations:

> He is limited to occasionally lifting and/or or carrying twenty pounds with the right dominant upper extremity and frequently lifting and/or carrying ten pounds with the right dominant upper extremity. He is limited to frequent use of the right dominate upper extremity for handling and fingering; he is limited to occasional use of peripheral vision and is able to read large print and see large objects but cannot read small print or drive a motor vehicle. He can tolerate occasional exposure to pulmonary irritants such as dust, odors, fumes, gases or poor ventilation; he can

> tolerate occasional exposure to hazards such as unprotected heights and moving mechanical machinery. His mental impairments limit him to only occasional interaction with the general public, supervisors and coworkers.

(Tr. 24). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that although Plaintiff is unable to perform his past relevant work, Plaintiff could perform other work in the national economy including such jobs as fastener, machine operator, cleaner and assembly press operator. (Tr. 32). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) improperly evaluating the evidence at step-two in the sequential evaluation; (2) improperly evaluating Plaintiff's credibility; and (3) failing to include all of plaintiff's impairments in his hypothetical questions to the vocational expert. Plaintiff has also filed a motion for a sentence remand due to newly discovered evidence. (Doc. 10). Upon close analysis, I conclude that the ALJ's decision should be affirmed and Plaintiff's motion for remand is not well-taken and should be denied.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory

3

meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination,

4

meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by Substantial Evidence**

1. *Step-two Analysis*

Plaintiff appears to argue that the ALJ erred at Step 2 of the sequential analysis when he failed to find his headaches/cerebral atrophy were severe impairments. For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. *See* 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

The ALJ noted that the record included Plaintiff's history of headaches and generalized cerebral atrophy. However, he found that Plaintiff's headaches and cerebral atrophy were non-severe because they were of insufficient frequency and duration to result in more than a minimal limitation in the ability to perform basic work activities. (Tr. 20- 21). In support of this finding, the ALJ noted that in December 2015, Plaintiff was treated by Gretchen Horner, C.N.P., for complaints of migraine headaches, which reportedly began one year prior. (Tr. 20, 478). Plaintiff believed they were triggered by stress and anxiety, and they were partially alleviated with Ibuprofen. (Tr. 478). The ALJ considered that on physical examination, Plaintiff's findings were unremarkable. (Tr. 20, 480-81). The ALJ also considered that a CT scan indicated generalized cerebral atrophy. In early 2016, Plaintiff reported headaches every other day. (Tr. 20-21, 488). However, the record did not contain any additional evidence relating to Plaintiff's headaches. Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

Regardless, even if the Court found the ALj erred, errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual

6

functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including unspecified macular degeneration, bilateral; age-related nuclear cataract, bilateral; other vitreous opacities, bilateral; dry eyes syndrome of the bilateral lacrinal glands; chronic giant papillary conjunctivitis, left eye; asthma, mild right carpal tunnel syndrome and chronic actinic otitis of both ears and therefore proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider Plaintiff's headaches and cerebral atrophy as "severe" at Step 2 of the sequential analysis will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered his impairments in combination. As stated above, the ALJ found that Plaintiff had several severe impairments. (Tr. 23). He also discussed his headaches and cerebral atrophy, as well as several other alleged impairments, and explained his finding that they were not medically determinable or severe impairments. (Tr. 20-21). Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining his RFC and therefore did not err at step-two of the sequential evaluation.

*2. Evaluation of Plaintiff's Mental Impairments*

Plaintiff appears to assert that the ALJ's mental RFC is not supported by substantial evidence because the ALJ improperly evaluated his mental limitations related to his ability to remember and concentrate.

7

As detailed above, the ALJ determined that Plaintiff's mental impairments limit him to only occasional interaction with the general public, supervisors and coworkers. In so concluding, the ALJ afforded great weight to the findings of the state agency consultants David Demuth, M.D. and Aracelis Rivera, Psy.D., who all found that Plaintiff's affective disorder, anxiety disorder, and personality disorder resulted only in mild restriction in activities of daily living, moderate difficulties in maintaining social functioning and no difficulties with concentration, persistence, or pace. They further determined that Plaintiff was limited to only occasional interaction with the public, coworkers, or supervisors. The ALJ determined that these findings were substantiated by the medical evidence of record. (Tr. 29). However, the ALJ assigned little weight to their findings related to difficulties with concentration, persistence, or pace because the ALJ found that these opinions did not fully account for Plaintiff's concentration issues or his testimony relating to his memory issues. *Id.*

Plaintiff claim, however, is that the record supports greater mental limitations than those found by the ALJ. Specifically, Plaintiff cites to the findings of Dr. Pawlarczyk, who performed a psychological evaluation in January 2016 and indicated Plaintiff's diagnoses as generalized anxiety disorder and social phobia. (Tr. 503). Dr. Pawlarczyk provided a Mental Functional Capacity Assessment in which he opined that Plaintiff had markedly limited ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact with the general public, and respond appropriately to changes in the work setting. (Tr. 498).

He opined that Plaintiff had moderately limited ability to accept instructions and criticism from supervisors and get along with coworkers. (Tr. 498). Of note, on the same assessment, Dr. Pawlarczyk indicated no significant limitations in Plaintiff's ability to remember work-like procedures; understand, remember, or carry out simple or detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make simple work-related decisions; or maintain socially appropriate behavior. (Tr. 498).

In evaluating Dr. Pawlarczyk's opinion, the ALJ considered that it was based on a one-time examination (Tr. 29). See 20 C.F.R. § 404.1527(c)(2)(ii) (ALJ may consider the extent of the treatment relationship). The ALJ also found it was not consistent with the objective medical records as a whole, given Plaintiff's limited treatment history and significant activities of daily living. (Tr. 29). Further, the ALJ considered that Dr. Pawlarczyk's opinion was internally inconsistent in that his notations and findings were relatively mild. (Tr. 29). See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion.").

In his evaluation of Plaintiff's mental impairments the ALJ also considered January 2016 NeuroTrax Data Report, which tested cognitive functioning. Plaintiff was more than one standard deviation below average in the following cognitive domains: memory, executive function, attention, information processing speed, and visual spatial. (Tr. 515). The examiner's opinion was that Plaintiff was markedly abnormal in all areas except verbal and motor skills. (Tr. 520). The ALJ considered the testing and the examiner's opinion and assigned little weight because it did not provide any specific

interpretation of the results and because the examiner's signature was illegible. (Tr. 29).

Additionally, as noted by the Commissioner, the ALJ considered that during a psychological evaluation performed by Albert Virgil, Ph.D., a clinical psychologist, Plaintiff's thought content was logical and coherent and he carried out interview instructions and tasks, despite a mildly depressed mood. (Tr. 25, 392). Plaintiff was alert and oriented to time, place, person, things, and situation, and his attention was sufficient and undistracted. (Tr. 393). He was able to count to 20 by twos and to 40 by threes, and could appropriately answer simple questions as to math and current events. (Tr. 393). The ALJ further noted the objective medical records showed little treatment, except fairly conservative treatment with medication. (Tr. 26).

In light of the foregoing, the undersigned finds that the ALJ reasonably considered the evidence of record and properly evaluated Plaintiff's mental impairments.

*3. Credibility*

Plaintiff next argues that the ALJ erred in evaluating his credibility. Specifically, Plaintiff contends that the ALJ improperly discredited Plaintiff's complaints relating to memory and concentration. Plaintiff's assertions lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v.*

*Halter,* 246 F.3d 762, 773 (6th Cir. 2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir. 1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to

11

relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir. 2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Additionally, an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, however, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D.Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (*citing Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir.1963).

Upon close inspection, the undersigned finds that the ALJ properly considered the requisite factors in making his credibility determination. Here, the ALJ determined

that Plaintiff's complaints of disabling pain were only partially credible in light of the objective evidence, Plaintiff's inconsistent statements and his reported daily activities.

As detailed above, the ALJ discussed the objective evidence and reasonably found that it did not support Plaintiff's allegations that his mental impairments are debilitating. Notably, the ALJ considered that during a psychological evaluation performed by Albert Virgil, Ph.D., a clinical psychologist, Plaintiff's thought content was logical and coherent and he carried out interview instructions and tasks, despite a mildly depressed mood. (Tr. 25, 392). Plaintiff was alert and oriented to time, place, person, things, and situation, and his attention was sufficient and undistracted. (Tr. 393). He was able to count to 20 by twos and to 40 by threes, and could appropriately answer simple questions as to math and current events. (Tr. 393). His remote and recent memory appeared to be intact. (Tr. 393). The ALJ also considered that subsequently, during an examination with Cindy Hammond, C.N.P., Plaintiff's judgment and insight were intact, his thought content was logical, and his abstract reasoning was within normal limits. (Tr. 25, 418).

The ALJ's credibility finding also properly considered that Plaintiff was able to perform his reported daily activities. While courts have questioned whether some daily activities really indicate that a Plaintiff is able to work outside of the house, an ALJ is allowed and indeed obligated by the regulations to consider whether a Plaintiff's daily activities are inconsistent with his stated functional abilities. See 20 C.F.R. § 404.1529(c) (recognizing that in assessing a claimant's allegations of pain and limitation, the ALJ must make a credibility finding based on both the objective medical evidence and other evidence in the entire case record). Here, the ALJ properly

considered Plaintiff's daily activities in addition to several other factors, in assessing his RFC.

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed*. See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir.2003).

*4. Hypothetical Questions*

Plaintiff's final assignment of error alleges that the ALJ's hypothetical questions to the vocational expert did not adequately portray Plaintiff's memory and concentration limitation; and as such, the ALJ erred in relying on the VE's testimony. The Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's credible limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.*, No. 99–3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of his ability to perform work as supported by the evidence.

In this case, the ALJ properly determined that Plaintiff's subjective complaints relating to the functional limitations associated with his impairments were not fully credible. Thus, the ALJ was not required to include limitations in her hypothetical question that were not supported or not credible. *See Casey v. Sec'y of Health &*

14

*Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). The VE's testimony provided substantial evidence supporting the ALJ's finding that Plaintiff was not disabled because he could perform a significant number of jobs. (Tr. 31-32 ). *See Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

     5. *Motion for Sentence Six Remand*

Also before the Court is Plaintiff's request for remand due to newly discovered evidence. Notably, after the ALJ issued an unfavorable decision, Plaintiff submitted additional evidence to the Appeals Council, which included a statement from Ms. Jordan, dated April 8, 2016, regarding Plaintiff's mental ability to perform work activities and a legible signature from Dr. Rosenberg in order to clarify that he signed the cognitive testing and opinion. (Tr. 348-53, 533-40).

Pursuant to Sentence Six, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is both new, in that it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material," meaning there is "a reasonable probability that the Secretary would have reached a difference disposition." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (citations omitted); *see also Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir. 2006). The plaintiff must also establish good cause for his failure to present the evidence to the ALJ. *See Bass v. McMahon,* 499 F.3d 506 (6th Cir.2007); *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir.1989). "'Good cause' is not

established solely because the new evidence was not generated until after the ALJ's decision. Here, Plaintiff has failed to establish that this evidence is new and/or material.

As noted by the Commissioner, Ms. Jordan's assessment, indicated by checkmarks, that Plaintiff had marked or extreme limitations in 45 out of 56 areas (Tr. 349-52). However, according to Ms. Jordan's records, although Plaintiff demonstrated some less than normal findings on mental status examination, he also demonstrated normal perception, had a normal appearance, and average eye contact. (Tr. 529-30). Further, Ms. Jordan states there were no signs/symptoms of acute distress in December 2015 and January 2016. (Tr. 524, 527, 531). As such, it is unlikely the ALJ would have credited Mr. Jordan's extreme findings in light of her inconsistent treatment notes. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). Additionally, to the extent that Ms. Jordan's opinion related back to December 2015, as Plaintiff contends Plaintiff fails to demonstrate good cause for not obtaining such prior to the ALJ's decision. With regard to the evidence indicating that Dr. Rosenberg signed the cognitive testing report, the ALJ failed to adopt such findings because the opinion itself indicated no specific functional limitations. The name of the author would not change this determination.

For these reasons, Plaintiff's motion for a sentence six remand is not well-taken and should be denied.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**. **IT IS FURTHER RECOMMENDED THAT** Plaintiff's motion for Sentence Six Remand (Doc. 10) be **DENIED** and that this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| LARRY SHOEMAKER, | Case No. 1:17-cv-205 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).